UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal No. 07-262 (JAF) |
| v. | |
| CRUZ ROBERTO RAMOS-GONZÁLEZ, | |
| Defendant. | |

**MEMORANDUM ORDER**

A little over three years ago, a jury convicted Cruz Roberto Ramos-González of a variety of drug-related offenses. Ramos-González was sentenced to 327 months. After his case was remanded on appeal because of a Confrontation Clause violation, Ramos-González filed a motion to dismiss his indictment, alleging prosecutorial misconduct and malicious prosecution in violation of his rights under the Fifth Amendment. Many of Ramos-González' claims are intertwined with an unrelated criminal case tried before Judge Pérez-Giménez. This Memorandum Opinion and Order addresses Ramos-González' claims and finds he has failed to allege error sufficient to warrant a wholesale dismissal of his indictment.

**Facts**

Ramos-González' initial trial before this court lasted from September 21 to September 25, 2009. He was convicted of violating Title 21, U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii). Ramos-González appealed his conviction. While awaiting his appeal, Ramos-González was tried before Judge Pérez-Gimenez for having led a multi-city drug trafficking organization operating out of a public housing facility in Yabucoa, Puerto Rico. Several witnesses testified against Ramos-González, including three cooperating defendants. After a three-week trial, Ramos-González was convicted.

Criminal No. 07-262 (JAF)                                                                                          -2-

As the government prepared for a third trial against Ramos-González—this time for charges of witness tampering and obstruction of justice—the government discovered a photocopy of a letter that had been written by Harry Smith Delgado-Cañuelas, one of the three cooperating defendants who had testified against Ramos-González. The government produced the letter to all forty-seven defendants, regardless of whether they had pled guilty or had gone to trial. Additionally, the prosecuting attorney who had handled both of the matters before this court and Judge Pérez-Gimenez ordered investigating agents to search through known evidence to locate the original letter and any other material that might be related to Delgado-Cañuelas. During this search, investigating agents found two additional notes that had not been previously produced by the government. These December 2008 notes were written by Delgado-Cañuelas during toilet conversations between him and one of the other cooperating defendants who testified against Ramos-González. These notes were produced by the government. Ramos-González then moved for a new trial. The government requested an evidentiary hearing. The prosecuting attorney testified at the evidentiary hearing. On October 8, 2010, and May 31, 2011, Judge Pérez-Gimenez denied Ramos-González' motions for a new trial, to dismiss the indictment, and to disqualify the prosecuting attorney from the case.

In January of 2012, the First Circuit remanded the present case because of a confrontation clause violation. The government remedied the violation and trial was rescheduled for January 30, 2012. The trial was finally scheduled for Monday, January 30, 2012.

On Friday, January 27, 2012, the United States produced 302 FBI reports to defendant of investigation interviews conducted with both Officers Javier Reyes and Wanda Vélez. The reports of Javier Reyes' investigation were consistent with his trial testimony, but the reports of Wanda Vélez contained facts that conflicted with her trial testimony from defendant's first trial in September 2009. Ramos-González moved to have Vélez excluded as a witness; the court held the motion to decide later, but the Government acquiesced and simply did not call Vélez to testify.

After hearing all the evidence, including the testimony of defense witnesses, the jury again found Ramos-González guilty. On April 9, 2012, Ramos-González was sentenced to twenty-seven years in prison once again. Shortly thereafter, Ramos-González moved to dismiss the indictment for prosecutorial misconduct and defendant, *pro se*, supplemented the motion.

## Analysis

Ramos-González moves for the dismissal of the indictment in this case, claiming prosecutorial misconduct in intentionally concealing material evidence.[1] (Docket No. 232 at 5.) The government responds that all of Ramos-González' allegations of misconduct are meritless. (Docket No. 248.) We agree with the government.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The duty to disclose such evidence is applicable even though there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107 (1976). The duty to disclose encompasses impeachment evidence, as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id., at 682; see also Kyles v. Whitley, 514 U.S. 419, 433-434 (1995). In order to comply with Brady, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." Kyles, 514 U.S. at 437.

Any error is harmless if the government shows it is "highly probable that the error did not influence the verdict." United States v. Flores-de-Jesus, 569 F.3d 8, 27 (1st Cir. 2009). The purposeful concealment of impeachable evidence can warrant a new trial "where the evidence is

---

[1] In note 2, (Docket No. 232 at 2), defense counsel charges the court with prejudging issues decided here, in this order and opinion. No such incident occurred. (S.H. Tran. at 55-62, Docket No. 245.)

Criminal No. 07-262 (JAF)                                                                                                        -4-

highly impeaching or when the witness' testimony is uncorroborated and essential to the conviction." United States v. Martinez-Medina, 279 F.3d 105, 126 (1st Cir. 2002). See also United States v. Conley, 415 F.3d 183, (1st Cir. 2005) (new trial granted when government withheld FBI memorandum indicating that key witness had expressed uncertainty about his recollection of underlying incident). But the jurisprudence of this circuit clearly holds that the "basic rule is that, because of the constitutionality mandated independence of the grand jury and the prosecutor, courts should be reluctant to dismiss an indictment." United States v. Giorgi, 840 F.2d 1022, 1031 (1st Cir. 1988). The dismissal of an indictment then "will be ordered only for serious and blatant prosecutorial misconduct that distorts the judicial process." Id. Moreover, "dismissing…an indictment after a defendant has been convicted of an offense is employed in only truly extreme cases of egregious prosecutorial misconduct." Pocardo v. United States, 784 F.2d 38, 44 (1st Cir. 1986). The central inquiry, then, is "whether any prosecutorial misconduct 'so poisoned the well' that it likely affected the outcome of the trial." United States v. Dancy, 640 F.3d 455, 463 (1st Cir. 2011).

Here, we adopt the concise understanding of our brother court when it encountered a similar set of allegations made by Ramos-González: The government neither committed a Brady violation nor engaged in prosecutorial misconduct when it produced materials to the defense post-trial. See United States v. Ramos-González, 2010 WL 4181674 (D.P.R. 2010); United States v. Ramos-González, 2011 WL 2144215 (D.P.R. 2011). The letter and notes amounted to "collateral impeachment evidence" that, at best, discredited the witness and his motivation for testifying. But, the letter and notes produced by the government at post-conviction did not, in any way, provide exculpatory evidence of the guilt of Ramos-González. Furthermore, the substance of these materials—whether Delgado-Cañuelas lied about having talked about the case in prison—was subject to extensive cross-examination at trial.

Criminal No. 07-262 (JAF)                                                                                           -5-

Ramos-González further contends that the government knowingly allowed Officer Vélez to perjure herself during trial after she testified regarding an identification that she previously indicated to federal investigators that she did not make. But, in the trial that followed the remand from the First Circuit, the government conceded Ramos-González' motion to preclude the testimony of Officer Vélez. In the new trial held before this court Officer Vélez did not testify and, therefore, any error her conflicting testimony may have originally introduced was cured in this subsequent and new trial. Therefore, on this count as well Ramos-González suffered no prejudice.

### Conclusion

For the foregoing reasons, Defendant's motion is hereby **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 1st day of February, 2013.

                                              s/José Antonio Fusté
                                              JOSE ANTONIO FUSTE
                                              United States District Judge